INTERNATIONAL HARVESTER Co., Appellee, v. JOSEPH WALKER, Appellant.

**Principal and agent:** AGENCY: EVIDENCE. On an issue as to
whether defendant was the purchaser of the note in question
or received it from plaintiff for collection, the evidence is re-
viewed and held to justify a finding that the defendant received
the same for collection, and to support a verdict for plaintiff
for the full amount defendant collected from the maker.

**Instructions:** FAILURE TO REQUEST: PREJUDICE. Where the court
instructed the jury in an action to recover the amount of notes
claimed to have been collected by defendant as its agent, that
unless plaintiff proved by a preponderance of the evidence
that it sent the notes to defendant for collection it must fail,
defendants could not complain of the court's failure to refer
to his affirmative defense that he purchased the notes; espe-
cially as he requested no such instruction.

**New trial.** Where the evidence discloses that defendant is en-
titled to a credit on the sum claimed by plaintiff, failure of the
court ·to instruct the jury to allow the same is ground for a
new trial, unless plaintiff consents to a remittitur.

*Appeal from Johnson District Court.*— HON. R. P. HOW-
ELL, Judge.

TUESDAY, JUNE 9, 1908.

ACTION to recover a sum collected by defendant upon
certain notes, which it is claimed were sent him for collec-
tion. Defendant claimed that he owned the notes, having
purchased them for one Thompson. The case was tried to
a jury, resulting in a verdict and judgment for plaintiff,
and defendant appeals.— *Reversed and remanded.*

*Bailey & Murphy,* for appellant.

*Baldwin & Fairchild,* for appellee.

DEEMER, J.— G. W. Burns was indebted to plaintiff upon three promissory notes of the face value of $125. These notes were payable to plaintiff or order, and in January of the year 1906 were in the hands of one Stevens at Iowa City for collection. Stevens had seen Burns, and he (Burns) had promised to pay the notes in full, part of the amount thereof within a short time, and the remainder as he could. Burns was a tenant upon the farm of a Mrs. Thompson, who is a sister of defendant, and he had advertised a sale of his personal property for January 3, 1906. He was owing Mrs. Thompson for rent of her farm and some other items, including the indebtedness to plaintiff, amounting in all to approximately $1,000. Mrs. Thompson and her husband lived in Des Moines, and defendant acted for Mrs. Thompson in looking after her farm. Burns' sale was postponed until January 8th, and Mr. Thompson was present thereat, and clerked the same. In some way defendant and Thompson learned that Stevens held plaintiff's notes for collection, and they set about obtaining the same, and here arises one of the first matters in dispute. Defendant claims that Burns agreed with Thompson that he (Thompson) might buy up plaintiff's claim, among others, as cheaply as he could, upon Thompson's promise to save him something in so doing. This is denied by Burns, who says that he never made such an agreement. At any rate a jury was authorized to find that defendant called Stevens up by phone on the morning of January 8th, and asked him if he did not have the Burns note for collection, that Stevens said he had, and that defendant then said that Burns was settling with many of his creditors for forty cents on the dollar, and he asked Stevens if he would settle for that. Stevens said he had no authority to do so, and defendant asked him to telegraph plaintiff and find out if it would accept that amount. Stevens promised to do so, and immediately sent the telegram. The next morning Stevens called defendant up and told him he had heard from plaintiff.

He asked defendant how Burns' sale had turned out, and defendant said " Not very well." Stevens then said he had authority to accept $55 for the notes. After some badinage defendant said, " Indorse the notes, and send them down." Stevens replied that he had no authority to indorse them, but that he (defendant) could mark them paid for him (Stevens). The notes were inclosed to defendant with the following letter: " Dear Sir: Inclosed herewith please find three Deering notes against G. W. Burns. The International Harvester Company instructed me to accept $55 in full settlement of these notes. You can mark these notes paid for me and send me $55. Respectfully, Fred L. Stevens." In telephoning Stevens said that he would accept $55 if that was the best offer that defendant could get. On the 10th or 11th of January defendant sent Stevens a draft for $55, which amount he (defendant) claims to have received from Thompson, but this latter statement is not borne out by the testimony. What became of this draft is not shown. Burns knew nothing of these transactions between plaintiff, Stevens, and defendant; but, when he came to settle with defendant and Thompson, he was charged with the sum of $120, which settlement was made on the morning of January 9th after the sale, and this amount, with other debts, was taken from the proceeds of the sale. The notes were never indorsed by plaintiff, but were sent to defendant with the instructions heretofore sent out.

I.   Plaintiff claims that the notes were sent to defendant for collection, while defendant insists that he purchased them from plaintiff for Thompson and is entitled to the entire sum collected thereon. The trial court instructed that the burden was upon plaintiff to establish the fact that the notes were sent to defendant for collection, and that if it failed to establish that fact, it could not recover. The first principal point made for defendant is that the verdict is without support in the testimony. From the statement of the issues and the

1. Principal
AND AGENT:
agency:
evidence.

testimony to which we have referred, it will be observed that defendant purchased the notes from plaintiff, that he received them from plaintiff for the purpose of collecting them, or that he undertook, without Burns' consent or authority, to get the notes at a discount from the plaintiff, either by pretending to purchase them from plaintiff, or to settle with plaintiff for them and use them against Burns when the proceeds of the sale were in his hands. He did not disclose to any one that he was acting or pretending to act for Thompson, and he had no authority to act for Burns. He is in no position to say that he was a mere interloper, and certainly he was not a purchaser of the notes, for both plaintiff and Stevens refused to sell them, and would not and did not indorse them. If he were a mere interloper, he could not collect the notes or any part thereof from Burns, and, as he was not an indorsee, he must have been acting either for plaintiff or for Burns. Having collected the $120 from Burns upon the notes, he must have done so upon the theory that he was acting for the holder thereof. In other words, if the jury found the facts to be as above set forth, it was justified in concluding that defendant was estopped from denying that he was acting for plaintiff, and, if that be true, the verdict is not without support.

II. Many rulings on the admission and rejection of testimony are complained of. Generally speaking, these rulings were correct. If any be questionable they were entirely without prejudice. The points involved call for no extended consideration, as they are simple, and it would not be of benefit to any one to set them out *in extenso.*

III. The trial court in its instructions really submitted but one question. It said, in effect, that unless plaintiff proved by a preponderance of the evidence that it 2. INSTRUCTIONS: sent the notes to defendant for collection, it failure to request: must fail. The affirmative defense of purchase prejudice. by defendant was stated by the court in referring to the issue, but was not further mentioned. Defendant asked

no instructions, but complains of those given, and of the failure of the court to refer to the affirmative defense. As defendant asked no instructions, we do not think he is in a position to complain. Moreover, no possible prejudice resulted to defendant in any event. The burden was cast upon plaintiff to show that it sent the notes to defendant for collection, and if it failed in that, defendant, under the instructions, was entitled to the verdict, even though he failed to establish his affirmative defense of purchase for Thompson. In other words, unless the jury found that defendant received the notes for collection, there could be no recovery, no matter whether defendant purchased the notes or not. Surely all presumptions of prejudice are negatived.

IV. Lastly, it is insisted that defendant should have had credit for the $55 draft sent to plaintiff in settlement for the note. Neither plaintiff nor Stevens denied the receipt of this draft. Nor do they show what became of it. It was sent to plaintiff or his agent, Stevens, in settlement. Plaintiff asked judgment for the sum of $120, the amount received by defendant, less $5 commission for collecting the same, and the jury awarded plaintiff the sum of $115, with interest from January 9th at 6 per cent. Defendant pleaded the payment to Stevens of the $55. As plaintiff did not deny the receipt of the draft or the money thereon, and did not return or offer to return either money or draft, we think the trial court was in error in not telling the jury to credit this amount upon the $115 yet claimed to be due, and that when its attention was called to the error in the motion for a new trial, a remittitur of the $55 should have been ordered, unless plaintiff returned the draft to defendant, or a new trial would be awarded. This is the order that should have been made by the trial court, and the cause will be remanded for that purpose. As the reversal is upon one point alone, the costs in this court will be equally awarded; that is to say, each party will pay one-half thereof. *Reversed* and *remanded*.

3. NEW TRIAL.